**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AHMAD ALKAYALI, an individual; and CERTIFIED NUTRACEUTICALS, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT DEN HOED, an individual; MOLECULAR BIOLOGY INTERNATIONAL, INC., an Iowa corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-777-H-JMA<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; and**<br><br>**(2) GRANTING LEAVE TO AMEND**<br><br>[Doc. No. 2.] |

On January 30, 2018, Plaintiffs Ahmad Alkayali and Certified Nutraceuticals, Inc. ("Plaintiffs") filed a complaint against Defendants Robert den Hoed and Molecular Biology International, Inc. ("Defendants") in the San Diego County Superior Court. (Doc. No. 1-2.) On April 20, 2018, Defendants removed that lawsuit to this District. (Doc. No. 1.) On April 27, 2018, Defendants filed a motion to partially dismiss the complaint. (Doc. No. 2.) Plaintiffs partially opposed the motion on June 25, 2018, (Doc. No. 6), and Defendants filed a reply on July 9, 2018. (Doc. No. 7.) The Court submitted the motion on the papers on July 10, 2018. (Doc. No. 8.) For the reasons below, the Court grants the motion in part and denies it in part.

1

# Background[1]

Plaintiff Ahmad Alkayali is a San Diego area resident and the CEO of Plaintiff Certified Nutraceuticals, Inc. ("CNI"), a California corporation. (Doc. No. 1-2 at ¶ 1.) Defendant Robert den Hoed is an Iowa resident and the President of Defendant Molecular Biology International, Inc. ("MBI"), an Iowa corporation. (Id. at ¶ 3.)

"On or about February 21, 2013, Plaintiffs and Defendants entered [into] a contract titled 'Exclusivity Agreement' (the 'Agreement') wherefore all parties agreed that ownership of intellectual property right to U.S. Patent 8,344,106 ('106 Patent') would be owned between Plaintiffs and Defendants jointly and collectively." (Id. at ¶ 8.) "Under the Agreement, MBI was to manufacture and sell products exclusively to [CNI] and [CNI] was to exclusively purchase products from MBI." (Id. at ¶ 9.) The products at issue are collagen mixtures made from chicken eggshells and "used for many things such as the healing of wounds, the production of skin creams and shampoo, the treatment of osteoarthritis and osteoporosis, and as an additive for human and pet food." (Doc. No. 2-2 Ex. 1.) The Agreement specified that it would remain in force during the life of the 106 Patent, which remains operative as of the time of this Order. (Doc. No. 1-2 at ¶ 10.)

In June of 2017, Plaintiffs allege that Defendants "breached the Agreement by selling" covered products "to third party marketers[.]" (Id. at ¶ 11.) Plaintiffs allege that Defendants' breach deprived Plaintiffs of profits they were entitled to under the Agreement. (Id. at ¶ 12.) In this lawsuit, Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and declaratory relief, and seek compensatory and equitable relief. (Id. at ¶¶ 14–35.)

# Discussion

**I. Legal Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

---

[1] The following facts, drawn from the complaint, are assumed true in evaluating Defendants' motion to dismiss. See, e.g., Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 751 n.2 (2017).

sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). The parties agree that Federal Rule of Civil Procedure 8(a)(2)'s plausibility standard governs Plaintiffs' contract claims.

The Supreme Court has explained that:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in [Bell Atlantic Corp. v. Twombley, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citations, quotation marks, and brackets omitted).

However, Federal Rule of Civil Procedure 9(b)'s particularity standard governs Plaintiffs' negligent misrepresentation claim. See, e.g., Miller v. Allstate Ins. Co., 489 F. Supp. 2d 1133, 1139 (S.D. Cal. 2007) ("Claims for negligent misrepresentation must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); Patriot Sci. Corp. v. Korodi, 504 F. Supp. 2d 952, 965 (S.D. Cal. 2007). The Ninth Circuit has explained that:

> Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud. This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false. Knowledge, however, may be pled generally.
>
> Under [Ninth Circuit] case law, Rule 9(b) serves two principal purposes. First, allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. Thus, perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.
>
> Second, the rule serves to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social

> and economic costs absent some factual basis. By requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges.
>
> Consistent with these requirements, mere conclusory allegations of fraud are insufficient. Broad allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient. Because this standard does not require absolute particularity or a recital of the evidence, a complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud.

United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (citations, quotation marks, alterations and footnote omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But a court need not accept "legal conclusions" as true. Ashcroft, 556 U.S. at 678. Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.[2] See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "'A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and

---

[2] The Court grants Defendants' request to take judicial notice of United States Patent No. 8,344,106 B1 and the United States Patent and Trademark Office assignment abstract of title for United States Patent No. 8,344,106, as these are documents whose authenticity is not subject to reasonable dispute. (Doc. No. 2-2.) See Fed. R. Evid. 201(b)(2). The Court denies Plaintiffs request to take judicial notice of the complaint filed before the Northern District of Iowa in Case No. 15-cv-4081-MWB, Molecular Biology International, Inc. v. Certified Nutraceuticals, Inc., because Plaintiffs failed to attach a copy of the document with their request. (Doc. No. 6-1.)

repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II. Analysis

Defendants argue that Plaintiff Alkayali's claims for breach of contract and breach of the implied covenant of good faith and fair dealing should be dismissed because Alkayali is not a party to the Agreement. (Doc. No. 2 at 9–11.) Defendants also argue that Plaintiffs' negligent misrepresentation claim is invalid because it is predicated on Defendants' promises of contractual performance, which are non-actionable predictions of future events. (Id. at 15–16.) Further, Defendants argue that Plaintiffs' claim that the parties share joint ownership over the 106 Patent is implausible on its face. (Id. at 16–20.) Finally, Defendants ask the Court to dismiss Plaintiffs' prayers for disgorgement of profits and attorneys' fees, contending that those remedies are not available for breach of contract. (Id. at 20–21.)

Plaintiffs concede that Alkayali lacks standing to pursue contract claims against Defendants, and that attorneys' fees are unavailable. (Doc. No. 6 at 6, 16.) However, Plaintiffs argue that their claims for negligent misrepresentation and declaratory relief are adequately pled. (Id. at 11–15.) Moreover, Plaintiffs argue that California courts have recognized disgorgement of profits as a contract remedy to prevent unjust enrichment. (Id. at 15–16.)

The Court accepts Plaintiffs' concessions, and dismisses Alkayali's contract claims against Defendants, as well as the complaint's prayer for attorneys' fees. Moreover, the Court agrees with Defendants' that Plaintiffs' negligent misrepresentation claim is invalid on its face. However, as explained below, the Court concludes that Plaintiffs have adequately pled their claim for declaratory relief, and that disgorgement of profits could be a valid remedy for Plaintiffs' contract claims. The Court does not evaluate or dismiss CNI's contract claims against MBI, because MBI did not put those claims at issue in its motion papers.

### A. Choice of Law

The Court's jurisdiction over Plaintiffs' state law claims is based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1). The Ninth Circuit has explained that:

> The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum. Federal courts are bound by the pronouncements of the state's highest court on applicable state law. Similarly, a federal court is not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it. An intermediate state appellate court decision is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017) (citations, brackets, and internal quotation marks omitted); accord Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077–78 (S.D. Cal. 2017).

The parties each note that either California or Iowa law could govern this dispute, but neither party takes a definite stance as to which state's law should apply. The Court concludes that California law should govern the analysis of Defendants' motion, but reserves the right to apply a different state's law in subsequent proceedings based on facts developed during discovery.

"Federal courts sitting in diversity look to the law of the forum state—here, California—when making choice of law determinations." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). Plaintiffs' complaint asserts both contract and tort claims. Under California's choice of law rules, the law governing tort claims is determined by applying the three-part "governmental interest" test, while the law governing contract claims is determined by applying Civil Code § 1646. See Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1454–1460 (2007). In applying the governmental interest test, the Court "must first consider whether the two states' laws actually differ; if so, [the Court] must examine each state's interest in applying its law to determine whether there is a 'true conflict'; and if each state has a legitimate interest [the Court] must compare the impairment to each jurisdiction under the other's rule of law." Arno v. Club Med Inc., 22

F.3d 1464, 1468 (9th Cir. 1994). On the other hand, Civil Code § 1646 provides that a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

Here, the present record does not permit the Court to apply either of these tests. The parties have not taken a position as to whether California or Iowa law should govern Plaintiffs' tort claims, and so the Court cannot faithfully apply the governmental interest test. Moreover, the Agreement does not indicate a place of performance, and the record contains no evidence as to where it was made; the Court therefore cannot apply Civil Code § 1646. Accordingly, the Court must apply California law by default. See, e.g., CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir. 2010) ("As a default, the law of the forum state will be invoked . . . ."). However, the Court reserves the right to change this determination for subsequent proceedings if either party makes a persuasive showing under the governmental interest test or § 1646 that Iowa law should apply to some or all of Plaintiffs' claims.

### B. Negligent Misrepresentation

Under California law, the "elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007). The complaint alleges that Defendants' contractual representation that MBI would sell collagen products derived from the 106 Patent "exclusively to Plaintiffs" was negligent because "Defendants made this representation without reasonable grounds for believing it was true since [MBI] thereafter sold [the collagen products] to Third Party Marketers in direct violation of the Agreement." (Doc. No. 1-2 at ¶ 27.)

Defendants argue that the complaint fails to state a plausible negligent misrepresentation claim because: (i) predictions about future contractual performance,

7

3:18-cv-777-H-JMA

rather than past or existing facts, generally cannot form the basis of a negligence claim; (ii) the complaint does not demonstrate justifiable reliance; and (iii) only professionals who provide information for a living—like lawyers and accounts—can be liable for negligent misrepresentations. (Doc. No. 2 at 15–16; Doc. No. 7 at 8.) Plaintiffs argue that Defendants' contractual representations are actionable because they implied that Plaintiffs intended to perform the contract at the time it was made, when in fact they had no intention of performing. (Doc. No. 6 at 12–13.)

The Court agrees with Defendants. "To be actionable, a negligent misrepresentation must ordinarily be as to past or existing material facts. Predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 159 (1991) (alteration, quotation marks, and citation omitted). Here, the complaint alleges that Defendants' contractual representations were made "without reasonable grounds for believing [they were] true" simply because MBI later breached the Agreement. (Doc. No. 1-2 at ¶ 27.) However, any statements Defendants made that MBI would perform its obligations under the agreement necessarily "involved a promise to perform at some future time," and thus cannot form the basis of a negligent misrepresentation claim. Tarmann, 2 Cal. App. 4th at 159.

Moreover, even if the Court were to disregard Rule 9(b)'s particularity requirement and read the complaint as alleging that MBI had no intent to perform at the time it entered the Agreement, Plaintiffs' claim would still fail. "Although a false promise to perform in the future can support an <u>intentional</u> misrepresentation claim, it does not support a claim for <u>negligent</u> misrepresentation." Stockton Mortg., Inc. v. Tope, 233 Cal. App. 4th 437, 459 (2014) (emphasis in original). Because a claim based on a false promise—i.e., actual fraud—requires proof of specific fraudulent intent, California law "precludes pleading a false promise claim as a negligent misrepresentation[.]" Tarmann, 2 Cal. App. 4th at 864.

The Court accordingly dismisses Plaintiffs' negligent misrepresentation claim.[3]

### C. Declaratory Relief

Defendants next argue that the complaint fails to plead a plausible claim for declaratory relief. (Doc. No. 2 at 16.) The Agreement contains a clause stating as follows:

> Whereas [BMI] and [CNI] jointly and collectively are the owner of certain intellectual properties specifically known as US Patent 8,344,106 B1, kollaGen II-xs, kollaGen I.V.X, and TendoGuard (hereinafter the Products)[.]

(Doc. No. 1-2, Ex. A) ("Whereas Clause"). Plaintiffs seek a declaration based on this clause that the Agreement makes Plaintiffs joint owners of the 106 Patent with Defendants. (Doc. No. 1-2 at ¶ 33.) Defendants argue that the Whereas Clause is insufficient evidence to show that Defendants intended to assign their ownership rights in the 106 Patent with Plaintiffs. (Doc. No. 2 at 16–20.) Defendants further point out that the Exclusivity Agreement would not have been necessary at all if Plaintiffs held joint ownership rights in the 106 Patent. (Id.)

Defendants' arguments have considerable persuasive force. Nevertheless, the Court concludes that dismissing Plaintiffs' claim for declaratory relief would be inappropriate at this stage. Defendants' own briefing recognizes that the Whereas Clause is "ambiguously-worded." (Doc. No. 2 at 17.) Cf. Scheenstra v. Cal. Dairies, Inc., 213 Cal. App. 4th 370, 389 (2013) (a contract is ambiguous when it is "reasonably susceptible to more than one interpretation"). The Court concludes that a trier of fact could reasonably interpret the Whereas Clause as evincing an intent for the parties to share joint ownership of the 106 Patent, depending on what other evidence of intent is developed during discovery. The

---

[3] Because the Court agrees that Defendants' contractual promises cannot form the basis of a negligent misrepresentation claim under Tarmann and Stockton, the Court does not address Defendants' additional arguments that the complaint does not plead justifiable reliance, and that only professional information-providers can be liable for negligent misrepresentations. As an additional reason for declining to address the latter argument, the Court notes that while Defendants made this argument under Iowa law in their opening brief, they failed to raise the issue under California law until their reply brief. See, e.g., Little v. Gore, 148 F. Supp. 3d 936, 944 n.2 (S.D. Cal. 2015) (collecting cases for the proposition that arguments raised in a reply brief, but not in memorandum of points and authorities attached to a motion to dismiss, are waived).

Court will thus decline to dismiss this claim on the pleadings.

### D. Disgorgement of Profits and Attorneys' Fees

The complaint seeks both disgorgement of profits and attorneys' fees, among other things, as remedies for Defendants' alleged breach of contract. (Doc. No. 1-2 at 7.) Defendants argue that neither of these remedies are available for breach of contract. (Doc. No. 2 at 20–21.) Plaintiffs concede that they cannot recover attorneys' fees, but argue that disgorgement is available under common law principles regarding restitution and unjust enrichment. (Doc. No. 6 at 15–16.)

The Court agrees with Plaintiffs. California law permits plaintiffs to seek disgorgement of a defendant's unjust enrichment as a restitutionary remedy for breach of contract.[4] See, e.g., Hernandez v. Lopez, 180 Cal. App. 4th 932, 939 (2009) (holding that "a plaintiff" may "seek compensation under an unjust enrichment theory . . . based on the pleaded cause of action for breach of contract"); Dunkin v. Boskey, 82 Cal. App. 4th 171, 198 (2000) (same); 1 Witkin, Summary 11th Contracts § 1050 (2018) ("Restitution may also be awarded in contract actions . . . ."). "While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." Restatement (3d) of Restitution and Unjust Enrichment § 1 cmt. a (2011).[5] Thus, for example, a plaintiff may require a defendant to "disgorg[e] its unjust enrichment"

---

[4] The terms "disgorgement," "unjust enrichment," and "restitution," although formally distinct, have confusing and often overlapping meanings within the law. It is not necessary for the Court to engage in a lengthy discussion of these terms here. In this context, disgorgement and unjust enrichment are synonymous, and both describe a species of equitable relief available under the broader heading of restitutionary remedies. For more discussion of these concepts, see Ajaxo Inc. v. E*Trade Group, Inc., 135 Cal. App. 4th 21, 56–57 (2005), 1 Witkin, Summary 11th Contracts § 1050 (2018), and the comments to § 1 of the Third Restatement of Restitution and Unjust Enrichment.

[5] California courts follow the general principles stated in the Restatement of Restitution and Unjust Enrichment in the absence of any contradictory statutory or decisional authority. See, e.g., First Nationwide Savings v. Perry, 11 Cal. App. 4th 1657, 1663 (1992); 1 Witkin, Summary 11th Contracts § 1052 (2018).

as a remedy for breach of a non-disclosure agreement in order to restore the plaintiff "to as good as a position as that occupied by him before the contract was made." <u>Ajaxo Inc. v. E*Trade Group, Inc.</u>, 135 Cal. App. 4th 21, 56–57 (2005) (footnote omitted). The general theory in such cases is that "'because X was unjustly enriched when it failed to uphold the contract, X must make restitution.'" <u>Id.</u> at 56 (quoting 1 Corbin on Contracts § 1.20) (brackets and first and third alterations omitted).

Here, Plaintiffs' breach of contract theory is simple: Defendants' enjoyed the benefits of the Exclusivity Agreement without upholding their end of the bargain. <u>Cf.</u> Cal. Civil Code § 3521 ("He who takes the benefit must bear the burden."). To the extent Defendants' alleged breach resulted in unjust enrichment, Plaintiffs may seek disgorgement as a remedy.[6] <u>Ajaxo</u>, 135 Cal. App. 4th at 57. However, per Plaintiffs' concession, the Court dismisses the complaint's prayer for attorney fees.

### E. Leave to Amend

As explained above, the Court dismisses Plaintiffs' negligent misrepresentation claim as failing to articulate a valid legal theory. The Court also dismisses Alkayali's contract claims Defendants' and Plaintiffs' prayer for attorneys' fees, because Plaintiffs conceded that those claims are inadequately pled. The Court does not dismiss CNI's contract claims against MBI because Defendants did not seek dismissal of those claims, does not dismiss Plaintiffs' claim for declaratory relief because it is adequately pled, and does not dismiss Plaintiffs' prayer for disgorgement of profits because disgorgement could potentially be a valid contract remedy if Plaintiffs are able to prove their claims.

Plaintiffs request leave to amend their dismissed claims. The Ninth Circuit has "consistently . . . held that leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'"

---

[6] Disgorgement is an equitable—and thus discretionary—remedy. <u>See, e.g.</u>, <u>S.E.C. v. First Pac. Bancorp</u>, 142 F.3d 1186, 1192 (9th Cir. 1998). Whether Plaintiffs can ultimately demonstrate that disgorgement is appropriate in this case will depend on equitable considerations that cannot be evaluated at this early stage.

11

3:18-cv-777-H-JMA

U.S. ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)). Here, the Court concludes that each of Plaintiffs' dismissed legal theories could be salvaged by the pleading of additional facts, or by re-working the claims to address the legal defects noted in this Order as well as those conceded by Plaintiffs in their briefing. The Court therefore directs Plaintiffs to file an amended complaint on or before **August 17, 2018**. At a minimum, for ease of case management, the amended complaint should delete any claims or prayers for relief that Plaintiffs are no longer asserting.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and denies it in part, and grants leave to amend. Specifically, the Court dismisses Alkayali's contract claims against Defendants, Plaintiffs' negligent misrepresentation claim, and Plaintiffs' prayer for attorneys' fees. The Court does not dismiss CNI's contract claims against MBI, Plaintiffs' claims for declaratory relief, or Plaintiffs' prayer for disgorgement of profits. The Court orders Plaintiffs to file an amended complaint on or before **August 17, 2018**.

**IT IS SO ORDERED.**

DATED: July 16, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT