# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMAD ALKAYALI, an individual; and CERTIFIED NUTRACEUTICALS, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT DEN HOED, an individual; MOLECULAR BIOLOGY INTERNATIONAL, INC., an Iowa corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-00777-H-JMA<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT; and**<br><br>**(2) GRANTING LEAVE TO AMEND**<br><br>[Doc. No. 12] |

On August 27, 2018, Defendants Molecular Biology International, Inc. ("MBI") and Robert den Hoed (collectively, "Defendants") filed a motion to dismiss Plaintiff Certified Nutraceuticals, Inc.'s ("CN") first amended complaint. (Doc. No. 12.) Plaintiff opposed the motion on September 7, 2018. (Doc. No. 13) Defendants filed a reply brief on September 17, 2018. (Doc. No. 14) On September 19, 2018, the Court took the matter under submission. (Doc. No. 15) For the reasons below, the Court grants the motion in part and denies it in part.

**Background**

The following facts are taken from the allegations in Plaintiff's first amended complaint. Plaintiff is a California Corporation with its principal place of business in San Diego County. (Doc. No. 10 at ¶ 4.) Defendant den Hoed is an Iowa resident and the President of Defendant MBI, an Iowa corporation. (Id. at ¶ 5–6.)

On or about February 21, 2013, Plaintiff and Defendant MBI entered into a written 'Exclusivity Agreement' ("Agreement") in San Diego County, California to co-own U.S. Patent No. 8,344106 ("'106 Patent"). (Id. at ¶ 1, 11.) "Under the Agreement, MBI was to manufacture and sell products exclusively to CN and CN was to exclusively purchase products from MBI." (Id. at ¶ 12.) The products at issue are collagen mixtures made from eggshells and are "used for many things such as the healing of wounds, the production of skin creams and shampoo, the treatment of osteoarthritis and osteoporosis, and as an additive for human and pet food." (Id. at 23.) The Agreement specified that it would remain in force during the life of the '106 patent, which remains operative as of the time of this Order. (Id. at ¶ 13.)

In fall of 2015, Plaintiff alleges that Defendant MBI was "selling the Products to another company for a price less than was being sold to Plaintiff." (Id. at ¶ 15.) Plaintiff alleges that "MBI orally agreed to cease and desist the sale of the Products to third-parties" and "the parties confirmed the previous terms and conditions of the Agreement." (Id. at ¶ 15.) Plaintiff alleges that, on or about June 2017, MBI "continued to sell the Products, notwithstanding the Agreement and the oral settlement reached [.]" (Id. at ¶ 16.) Plaintiff alleges that Defendants' breach deprived Plaintiff of profits it was entitled to under the Agreement. (Id. at ¶ 18.)

On January 30, 2018, Plaintiff CN[1] filed a complaint against Defendants in the San Diego County Superior Court. (Doc. No. 1-2.) Plaintiff brought claims for breach of

---

[1] Plaintiff Ahmad Alkayali joined in the complaint. In the first amended complaint, Plaintiff Alkayali is no longer pursuing his claims. As such, the order refers to Plaintiff CN when discussing the operative first amended complaint.

contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and declaratory relief, and sought compensatory and equitable relief. (Id. at ¶¶ 14–35.) On April 20, 2018, Defendants removed that lawsuit to this Court. (Doc. No. 1.)

On April 27, 2018, Defendants filed a motion to partially dismiss the complaint. (Doc. No. 2.) On July 16, 2018, the Court granted the motion in part, denied it in part, and granted leave to amend the complaint. (Doc. No. 9.) On August 13, 2018, Plaintiff CN filed an amended complaint against Defendants. (Doc. No. 10.) In its first amended complaint, Plaintiff added a claim for intentional misrepresentation and requested an accounting. (Id. at ¶¶ 11–14.)

## Discussion

### I. Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). The parties agree that Federal Rule of Civil Procedure 8(a)(2)'s plausibility standard governs Plaintiff's contract claims.

The Supreme Court has explained that:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in [Bell Atlantic Corp. v. Twombley, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citations, quotation marks, and brackets omitted).

However, Federal Rule of Civil Procedure 9(b)'s particularity standard governs Plaintiff's negligent misrepresentation and intentional misrepresentation claims. See, e.g., Miller v. Allstate Ins. Co., 489 F. Supp. 2d 1133, 1139 (S.D. Cal. 2007) ("Claims for

3

3:18-cv-00777-H-JMA

contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and declaratory relief, and sought compensatory and equitable relief. (Id. at ¶¶ 14–35.) On April 20, 2018, Defendants removed that lawsuit to this Court. (Doc. No. 1.)

On April 27, 2018, Defendants filed a motion to partially dismiss the complaint. (Doc. No. 2.) On July 16, 2018, the Court granted the motion in part, denied it in part, and granted leave to amend the complaint. (Doc. No. 9.) On August 13, 2018, Plaintiff CN filed an amended complaint against Defendants. (Doc. No. 10.) In its first amended complaint, Plaintiff added a claim for intentional misrepresentation and requested an accounting. (Id. at ¶¶ 11–14.)

## Discussion

### I. Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). The parties agree that Federal Rule of Civil Procedure 8(a)(2)'s plausibility standard governs Plaintiff's contract claims.

The Supreme Court has explained that:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in [Bell Atlantic Corp. v. Twombley, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citations, quotation marks, and brackets omitted).

However, Federal Rule of Civil Procedure 9(b)'s particularity standard governs Plaintiff's negligent misrepresentation and intentional misrepresentation claims. See, e.g., Miller v. Allstate Ins. Co., 489 F. Supp. 2d 1133, 1139 (S.D. Cal. 2007) ("Claims for

3

3:18-cv-00777-H-JMA

negligent misrepresentation must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); Patriot Sci. Corp. v. Korodi, 504 F. Supp. 2d 952, 965 (S.D. Cal. 2007). The Ninth Circuit has explained that:

> Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud. This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false. Knowledge, however, may be pled generally.
>
> Under [Ninth Circuit] case law, Rule 9(b) serves two principal purposes. First, allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. Thus, perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.
>
> Second, the rule serves to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis. By requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges.
>
> Consistent with these requirements, mere conclusory allegations of fraud are insufficient. Broad allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient. Because this standard does not require absolute particularity or a recital of the evidence, a complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud.

United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (citations, quotation marks, alterations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). In addition, a court need not accept legal conclusions as true. Ashcroft, 556 U.S. at 678. Further, it is improper for a court to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have

violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Finally, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II. Analysis

### A. Choice of Law

The parties disagree as to whether California or Iowa law governs Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims. The Court's jurisdiction over Plaintiff's state law claims is based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1). The Ninth Circuit has explained that:

> The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum. Federal courts are bound by the pronouncements of the state's highest court on applicable state law. Similarly, a federal court is not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it. An intermediate state appellate court decision is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017) (citations, brackets, and internal quotation marks omitted); accord Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077–78 (S.D. Cal. 2017).

"Federal courts sitting in diversity look to the law of the forum state—here,

California—when making choice of law determinations." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). Under California's choice of law rules, claims requiring the interpretation of a contract are determined by applying California Civil Code § 1646, while the governmental interest analysis applies to other choice of law issues. See Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1454–60 (2007) ("[W]e hold that the choice-of-law rule in Civil Code section 1646 determines the law governing the interpretation of a contract, notwithstanding the application of the governmental interest analysis to other choice-of-law issues.").

With respect to contract interpretation claims, California Civil Code § 1646 provides that a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." A place of performance is indicated by a contract "if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." Frontier Oil, 153 Cal. App. 4th at 1450.

With respect to other claims, the governmental interest test applies. Pursuant to this three-part test, the Court "must first consider whether the two states' laws actually differ; if so, [the Court] must examine each state's interest in applying its law to determine whether there is a 'true conflict'; and if each state has a legitimate interest [the Court] must compare the impairment to each jurisdiction under the other's rule of law." Arno v. Club Med Inc., 22 F.3d 1464, 1468 (9th Cir. 1994).

The parties disagree as to whether California or Iowa law applies to the breach of contract and breach of the covenant of good faith and fair dealing claims. The Court concludes that California law should apply to these claims. Plaintiff, a California corporation with a principal place of business in San Diego County was to be the exclusive marketer for the products manufactured by Defendant MBI, and would exclusively purchase the products from Defendant MBI. Moreover, according to the first amended complaint, the parties entered into the Agreement in San Diego, California. Under these circumstances, and pursuant to California Civil Code § 1646, the Court determines that it

is appropriate to apply California law to the contract claims. With respect to disgorgement of profits and intentional misrepresentation, Defendants assert that there is no conflict between California law and Iowa law, and Plaintiff contends that California law applies. With respect to the negligent misrepresentation claim, the parties agree that California law applies. As a result, the Court applies California law to all of Plaintiff's claims.

### B. Breach of Contract Claims and Breach of the Covenant of Good Faith and Fair Dealing against Defendant den Hoed

Under California law, "[d]irectors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970). Plaintiff has not specifically alleged that Defendant den Hoed entered into the contract in his individual capacity, rather than on behalf of Defendant MBI.[2] Instead, Plaintiff argues that Defendant den Hoed is the alter ego of Defendant MBI, and can thus be held liable for Plaintiff's claims against Defendant MBI for breach of contract and breach of the implied covenant of good faith and fair dealing. (Doc. No. 13 at 6–9).

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300 (1985) (internal citation omitted). Two elements must be alleged in order for the doctrine to be invoked: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." Id. at 300. With respect to the "unity of interest" element, courts consider a number of factors in determining whether a unity of interest exists. See Zoran

---

[2] "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." Smith v. City & Cty. of San Francisco, 225 Cal. App. 3d 38, 49 (1990).

Corp. v. Chen, 185 Cal. App. 4th 799, 811–12 (listing twenty-one non-exhaustive factors). With respect to the "inequitable result" element, courts consider whether "'adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice. . . .' Bad faith is a critical factor in the analysis." Gerritsen v. Warner Bros. Entm't Inc., 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015) (quoting First Western Bank & Trust Co. v. Bookasta, 267 Cal. App. 2d 910, 914–15 (1968)).

"Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." Gerritsen, 116 F. Supp. 3d at 1136. To properly allege an alter ego claim, a party must provide more than a list of the factors considered under the relevant state law couched as factual allegations. For example, in Gerritsen, a plaintiff alleged that a defendant was undercapitalized but failed to plead facts supporting the allegation. Id. at 1142. The court held that "[t]his type of conclusory allegation, unsupported by facts, does not adequately plead that [defendant] was undercapitalized and thus does not demonstrate that there was a 'unity of interest' between [the defendants]." Id.; see also, Partners Coffee Co., LLC v. Oceana Servs. & Prod. Co., 700 F. Supp. 2d 720, 737 (W.D. Pa. 2010) (holding that the defendants "provided little or nothing in the way of factual allegations to support their contention that [alter ego] liability should be imposed" and merely listed "factors identified in [the relevant state law] based on Defendants' 'information and belief'"); In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (holding that the plaintiffs "failed to allege any facts to support their conclusion that the bank holding companies exercised such dominion and control over its subsidiaries" and explaining further that "[t]he unadorned invocation of dominion and control is simply not enough").

Plaintiff's first amended complaint does not contain specific alleged facts supporting the "unity of interest" factors considered under California law. Plaintiff merely alleges, on its information and belief, that a list of the "unity of interest" factors are true, without providing specific alleged facts in support:

> Plaintiff is informed and believes and based thereon herein alleges that Defendant, DEN HOED, is an individual residing in the state of Iowa and is the President of Defendant, MBI. Plaintiff is further informed and believes and based thereon herein alleges that the Defendant, MBI, is owned, operated, and managed by DEN HOED in a manner such that the separate identities by and between these Defendants have been lost such that Defendant, MBI, should not be treated as an entity distinct and different from the Defendant, DEN HOED. In fact, Plaintiff is informed and believes that the Defendant, MBI, is a mere conduit and shell by which the Defendant, DEN HOED, conducts business. Plaintiff is further informed and believes and based thereon herein alleges that the Defendant, MBI, is dominated by the Defendant, DEN HOED, and that funds from that company have been diverted to DEN HOED such that their separate identities did not exist; that there has been a commingling of funds and assets; there has been a failure to segregate funds; there has been a diversion of corporate funds or assets to other than corporate uses; that DEN HOED treated the assets of MBI as his own; the corporation failed to maintain adequate corporate records; DEN HOED and MBI used the same offices to conduct business; they used the same employees and attorneys; Defendant, MBI, was inadequately capitalized for the business it conducted; the corporation was used as a subterfuge to engage in illegal transactions; and other factors, not currently ascertained, but all of which will command that the corporate shell of MBI be pierced such that the liability of the corporation is imposed against DEN HOED and vice versa.

(Doc. No. 10 at ¶ 6.) "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." <u>Gerritsen</u>, 116 F. Supp. 3d at 1136. Here, Plaintiff alleges conclusory allegations of the "unity of interest" factors, but provides no facts in support. As a result, the Court concludes that Plaintiff has failed to allege a "unity of interest" sufficient to satisfy the first prong of California's alter ego test. The Court accordingly dismisses Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Defendant den Hoed. The Court grants Plaintiff leave to amend these claims in order to allege specific facts supporting the "unity of interest" factors.

### C. Negligent Misrepresentation

The parties agree that California law should apply with respect to Plaintiff's negligent misrepresentation claim. Under California law, the "elements of negligent

9

3:18-cv-00777-H-JMA

misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007). California does not permit a claim for negligent misrepresentation for statements made concerning future intent. See Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158 (1991) ("To be actionable, a negligent misrepresentation must ordinarily be as to past or existing material facts. '[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.'" (quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 678, pp. 779–80)).

Defendants argue that the first amended complaint fails to state a plausible negligent misrepresentation claim because: (1) Plaintiff's claim is premised on a nonactionable promise of future performance and (2) Defendants did not owe Plaintiff a duty of care that would support a negligent misrepresentation claim. (Doc. No. 12-1 at 26–27.) Plaintiff argues that Defendants made statements of fact, rather than statements of opinion, when they asserted that Defendant MBI had the capacity to manufacture the products and would exclusively sell the products to Plaintiff. (Doc. No. 13 at 12.) Plaintiff concedes that representations sufficient to support a claim for negligent misrepresentation must be about past or existing facts, not a false promise to perform in the future. (Doc. No. 13 at 12–13.)

Plaintiff's present allegations are insufficient to support a negligent misrepresentation claim. The representation that Defendant MBI had the capacity to manufacture the products and would exclusively sell the products to Plaintiff is simply a promise to perform. "Although a false promise to perform in the future can support an intentional misrepresentation claim, it does not support a claim for negligent misrepresentation." Stockton Mortg., Inc. v. Tope, 233 Cal. App. 4th 437, 459 (2014) (emphasis omitted). Because a claim based on a false promise—i.e., actual fraud—requires proof of specific fraudulent intent, California law "precludes pleading a false promise claim

as a negligent misrepresentation[.]" Tarmann, 2 Cal. App. 4th at 864. Here, the first amended complaint alleges that Defendants' contractual representations were made "without reasonable grounds for believing [they were] true" apparently because MBI later breached the Agreement. (Doc. No. 10 at ¶ 40.) However, any representation that MBI would perform its obligations under the agreement necessarily "involved a promise to perform at some future time," and thus cannot form the basis of a negligent misrepresentation claim. Tarmann, 2 Cal. App. 4th at 159. The Court accordingly dismisses Plaintiff's negligent misrepresentation claim.

### D. Intentional Misrepresentation

With respect to intentional misrepresentation, Defendants assert that there is no conflict between California law and Iowa law and Plaintiff contends that California law applies. Thus, the Court will apply California law. Under California law, "[t]he elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." Conroy v. Regents of Univ. of California, 45 Cal. 4th 1244, 1255 (2009).

Defendants argue that the first amended complaint fails to state a plausible intentional misrepresentation claim because: (1) Plaintiff did not plead any facts that would support a reasonable inference that Defendants did not intend to perform the promise to sell exclusively to CN at the time they allegedly made that promise and (2) the representation regarding CN's investment of funds in marketing channels increasing product sales constitutes a nonactionable statement of opinion or prediction of future events. (Doc. No. 12-1 at 29–31.) Plaintiff argues that it has alleged that "defendants knew their representations were false when made; they concealed their secret intention to not honor the exclusivity agreement(s); and in doing so intended to defraud Plaintiff." (Doc. No. 13 at 13.)

The Court agrees with Plaintiff. Plaintiff alleges that at the time Defendants entered into the written Agreement, Defendants "falsely represented to Plaintiff that MBI would,

as a fact, sell the manufactured Products solely and exclusively to Plaintiff to the exclusion of all other third parties" and that "[a]t the time Defendants made [the representations] they knew that they were false." (Doc. No. 10 at ¶¶ 45–46). In addition, Plaintiff alleges that Plaintiff and Defendant entered into an exclusivity agreement, (Doc. No. 10 at ¶ 11); that MBI was to manufacture and sell products exclusively to CN and CN was to exclusively purchase products from MBI, (Id. at ¶ 12); that Defendant MBI sold "the Products to another company for a price less than was being sold to Plaintiff," (Id. at ¶ 15); that "MBI orally agreed to cease and desist the sale of the Products to third-parties" and "the parties confirmed the previous terms and conditions of the Agreement," (Id.); and that MBI "continued to sell the Products, notwithstanding the Agreement and the oral settlement reached," specifically listing three third-party marketers, (Id. at ¶ 16). These allegations support the inference that Defendants never intended to honor the exclusivity agreement from the time that the parties entered into the initial agreement. As a result, Court concludes that Plaintiff has adequately pled its claim for intentional misrepresentation.

### E. Disgorgement of Profits and Accounting

The first amended complaint seeks disgorgement of profits as a remedy for Defendants' alleged breach of contract. (Doc. No. 10 at 14) Defendants argue that disgorgement of profits is not available for breach of contract because Plaintiff seeks nonresitutionary disgorgement. (Doc. No. 12-1 at 19–22.) In its previous order concerning Defendants' motion to dismiss the complaint, the Court determined that Plaintiff pled adequate facts to seek disgorgement as a remedy. (Doc. No. 9 at 10–11.) For the same reasons stated in the Court's previous order, the Court declines to dismiss the prayer for disgorgement in the first amended complaint.

In their motion to dismiss, Defendants premise their challenge to Plaintiff's request for an accounting on the basis that disgorgement is not a remedy available to the Plaintiff. (Doc. No. 12-1 at 22.) Given that the Court denies Defendants' challenge to Plaintiff's claim for disgorgement, Defendants' argument to dismiss the accounting claim also fails.

/ / /

12

3:18-cv-00777-H-JMA

### F. Leave to Amend

Plaintiff requests leave to amend its dismissed claims. The Ninth Circuit has "consistently . . . held that leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" U.S. ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)). Here, the Court grants Plaintiff leave to amend the dismissed claims to remedy the deficiencies noted in this Order. The Court grants Plaintiff leave to file an amended complaint on or before **October 29, 2018**.

### Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss, and grants leave to amend. Specifically, the Court dismisses Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Defendant den Hoed with leave to amend. The Court also dismisses Plaintiff's negligent misrepresentation claim with leave to amend. The Court denies Defendants' motion to dismiss Plaintiff's intentional misrepresentation claim, Plaintiff's prayer for disgorgement of profits, and Plaintiff's request for an accounting. The Court orders Plaintiff to file an amended complaint on or before **October 29, 2018**.

**IT IS SO ORDERED.**

DATED: September 20, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT